IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| VANESSA HATCH<br>9704 Thorncrest Drive<br>Fort Washington, MD 20744<br><br>      Plaintiff,<br><br>v.<br><br>TRANS UNION, LLC<br>555 W. Adams St<br>Chicago, IL 60661<br><br>   Serve:  CSC – Lawyers Incorporating Service<br>             Company<br>             7 St. Paul St, Suite 820<br>             Baltimore, MD 21202<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.<br>505 City Pkwy West<br>Orange, CA 92668<br><br>   Serve:  The Corporation Trust, Inc.<br>             2405 York Rd, Suite 201<br>             Lutherville Timonium, MD 21093<br><br>UNIVERSAL COLLECTION SERVICES, LLC.<br>5707 Calverton St, Suite 2A<br>Catonsville, MD 21228<br><br>   Serve:  Jeffrey English<br>             5707 Calverton St, Suite 2A<br>             Catonsville, MD 21228<br><br>              Defendants. | Civil Action No. 8:21-cv-1338 |

## **COMPLAINT**

      COMES NOW Plaintiff, Vanessa Hatch, by counsel, and files this Complaint against

Defendants, Trans Union, LLC ("Trans Union"); Experian Information Solutions, Inc.

("Experian"); and Universal Collection Services ("Universal"), (collectively "Defendants"). In support of her claims, Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action for statutory, actual, and punitive damages; costs; and attorney's fees brought pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.

2.      Trans Union and Experian, two of the "Big Three" consumer reporting agencies, have a long history of consumer complaints and lawsuits alleging (and establishing) that they unreasonably mixed the credit files and information of one consumer with the credit reports of another consumer. In this case, representative of numerous others, Trans Union and Experian combined or mixed the Plaintiff's credit file with the file of a different person with a similar name, resulting in a collection account appearing in Plaintiff's credit report that belonged to someone else.

3.      Accordingly, Plaintiff alleges claims against Trans Union and Experian for failing to reasonably ensure the maximum possible accuracy of Plaintiff's credit reports in violation of the FCRA, 15 U.S.C. §1681e(b). Plaintiff also alleges a claim against Experian for failing to fulfill its reinvestigation duties in violation of the FCRA, 15 U.S.C. § 1681i.

4.      Plaintiff also alleges claims against Universal for failing to fully and properly investigate Plaintiff's disputes and to review all relevant information provided by the consumer reporting agencies in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1) and for attempting to collect a debt from the Plaintiff that she did not owe, in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692e.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 168lp, and

15 U.S.C. § 1692k(d).

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

7. Plaintiff is a natural person residing in this District and Division and a consumer as defined by 15 U.S.C. § 1681a(c) and 15 U.S.C. § 1692a(3).

8. Trans Union is a foreign limited liability company authorized to do business in the Commonwealth of Virginia through its registered offices in Baltimore, Maryland. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

9. Experian is a foreign corporation authorized to do business in the Commonwealth of Virginia through its registered offices in Lutherville Timonium, Maryland. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

10. Universal is a Maryland corporation. It is a furnisher as governed by the FCRA and a "debt collector" as defined by 15 U.S.C. § 1692a(6).

## FACTS

11. In April 2021, Plaintiff applied for an auto loan and the auto lender obtained a copy of Plaintiff's Experian credit report.

12. The auto lender offered Plaintiff a less competitive rate than she expected.

13. Plaintiff learned that Experian was reporting derogatory information that did not belong to her.

14. Experian reported a Universal collection account for a medical debt arising from a treatment at John Hopkins Emergency that did not belong to her.

15. The reporting of the collection account dropped Plaintiff's credit score by more than 100 points. The Universal collection account was the only adverse account reporting within her credit file.

16. After learning of this inaccurate reporting, Plaintiff immediately took steps to have the information removed from her report.

17. Plaintiff immediately disputed the account by filing a dispute with Experian on April 26, 2021.

18. Upon information and belief, Experian forwarded notification of Plaintiff's dispute to Universal.

19. Neither Experian nor Universal conducted an adequate investigation into Plaintiff's dispute. If they had, they would have learned that the information on the account did not match the Plaintiff's information.

20. Instead, the same day Plaintiff submitted her dispute—Experian and Universal concluded that the reporting of the Universal account was correct and should remain on Plaintiff's credit report.

21. Plaintiff called Universal to inquiry on the account. The Universal representative that she spoke to confirmed that information associated with the account did not match the Plaintiff's information. The account pertained to an individual with a different name.

22. However, the Universal representative did not confirm that Universal would cease its collection attempts. Rather, the representative stated that further research was needed.

23. Once more, Plaintiff disputed the reporting of the Universal account to Experian and called Universal to inquire upon the collection account.

24. Universal sent correspondence to Plaintiff stating that it cancelled the account and would delete the credit reporting.

25. Experian deleted the Universal account in the investigation results Experian provided to Plaintiff.

26. Around the same time, Plaintiff learned that Trans Union also reported the Universal collection account belonging to another individual.

27. Plaintiff learned that Trans Union published this accurate information to her potential creditors, including Citibank.

28. The Universal collection was the only derogatory account reporting within Plaintiff's Trans Union file.

29. As a result of Defendants' conduct, Plaintiff has suffered significant actual damages, including a decreased credit score, credit denials and increased interest rates on her auto loan. This ordeal has also caused her to suffer emotional distress, including stress.

30. At all times pertinent to this Complaint, Universal's processing of consumer disputes was willful and carried out in reckless disregard for a consumer rights as set forth under the FCRA. By example only and without limitation, Universal's conduct was willful because it was intentionally accomplished through intended procedures and because Universal believes that its efficiency in processing disputes is more important than making sure that the disputes are investigated thoroughly and accurately.

**Trans Union's Lax Standard and Willful Misconduct**

31. Trans Union has substantial notice and knowledge of the "mixed file" problems and failures of its business procedures and systems.

32. As early as 1992, the Attorneys General of eighteen states were forced to file a lawsuit against Trans Union because of its conduct in connection with mixing consumer credit files. The lawsuit resulted in an Agreement of Assurances between the attorneys general relating to Trans Union's responsibilities to prevent mixed files.

33. Trans Union knows that their computer system causes one individual's credit report to be confused with another individual's credit report causing a "mixed file."

34. Trans Union acknowledges that its computer system causes credit reporting errors. Trans Union explains that some errors are caused by "*confusion between consumers with similar personal information.*"[1]

35. Trans Union has been sued repeatedly for failing to prevent mixed consumer files, including *Philbin v. Trans Union Corp.*, 101 F.3d 957 (3d Cir. 1996); *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329 (9th Cir. 1995); *O'Conner v. Trans Union Corp.,* Civ. No. 97-4633, 1999 WL 773504 (E.D. Pa. Sept. 29, 1999); *see also Thomas v. Trans Union*, C.A. No. 00-1150 (D. Or. 2002) (jury verdict of $5.3 million remitted to $1.3 million); *Soghomonian v. Trans Union*, (E.D. Cal.) ($990,000 verdict); *Price v. Trans Union*, LLC, 737 F. Supp. 2d 281 (E.D. Pa. 2010); *Neclerio v. Trans Union*, LLC, Civ. No. 3:11cv1317 (D. Conn. Aug. 17, 2011).

36. Numerous cases alleging a mixed file and/or a failure to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files Trans Union publishes and maintains have also been brought in this District. *See e.g.*, *Bridgett v. Trans Union, LLC*, 1:16-cv-1112 (E.D. Va. 2016); *Lopez v. Trans Union, LLC,* 1:12-cv-902 (E.D. Va. 2012); *Chaudhary v. Trans Union, LLC,* 3:14-cv-123 (E.D. Va. 2014);

---

1 https://www.transunion.com/blog/credit-advice/demystifying-data-maintaining-its-accuracy, last visited May 27, 2021.

*Kang v. Equifax Info. Servs., LLC*, 1:15-cv-01406 (E.D. Va. 2015); *Moulvi v. Equifax Info. Servs. LLC*, 1:15-cv-01073 (E.D. Va. 2015); *Barclay v. Trans Union, LLC*, 1:14-cv-01200 (E.D. Va. 2014).

37. Trans Union knowingly chooses to ignore these notices of its mixed file problems. It does so even though it already possesses a simple, easy, and inexpensive means to correct and avoid the problem.

38. Despite these lawsuits and multi-million-dollar verdicts, Trans Union has not significantly modified its procedures to assure that the credit reports that it prepares, publishes, and maintains are as accurate as possible, as required by the FCRA at 15 U.S.C. § 1681e(b).

39. Upon information and belief, Trans Union has not, and does not intend, to modify its procedures to comply with this section of the FCRA because compliance would drastically increase its operating expenses.

40. Accordingly, Trans Union's violation of 15 U.S.C. § 1681e(b) was willful and Trans Union is liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

**Experian's Double Standard and Willful Misconduct**

41. Experian also has substantial notice and knowledge of the "mixed file" problems and failures of its business procedures and systems.

42. As early as 1991, the Federal Trade Commission ("FTC") brought an enforcement action against Experian [formerly TRW, Inc.] in the United States District Court for the Northern District of Texas. *FTC v. TRW, Inc.*, 784 F. Supp. 361 (N.D. Texas 1991). In settling the enforcement action brought by the AGs, Experian agreed to make the following practice changes:

1. ***Maintain reasonable procedures to prevent the occurrence or reoccurrence of Mixed Files***,[2] including but not limited to:

a. Continuing its current efforts to improve its information gathering, storing, and generating systems ***to reduce the occurrence of Mixed Files***, through modification of its software system to enable such system to accommodate and use, for matching and identification purposes, a Consumer's Full Identifying Information;[3] and

b. Not later than July 31, 1992, implementing and utilizing changes to its system designed to prevent, to the extent it reasonably can, the reoccurrence of Mixed Files, once known;

…

iv. Employing reasonable procedures designed specifically ***to reinvestigate disputes from Consumers that result from Mixed Files***.

…

For the five (5) year period following the entry of [the Consent Order], [Experian] shall measure, monitor, and test the extent to which changes in [Experian's] computer system, including its algorithms, reduce the incidence of Mixed Files.

*FTC*, 784 F. Supp., 362-364 (N.D. Texas 1991).

43. Similarly, another enforcement action was brought against Experian by nineteen state attorneys general that resulted in a similar consent order as described in the previous paragraphs, including the procedures related to the prevention of mixed files and procedures to reinvestigate disputes resulting from mixed files. *See TRW, Inc. v. Morales*, Civil Action No. 3-91-1340-H (N.D. Tex. 1991).

---

[2] Mixed File is defined in the Consent Order as a Consumer Report in which some or all of the information pertains to Persons other than the Person who is the subject of that Consumer Report. *Id*. at 362.

[3] Full Identifying Information is defined in the Consent Order as full last and first name; middle initial; full street address; zip code; year of birth; any generational designation; and social security number. *Id*.

44. Despite the consent orders with the FTC and the Attorneys General, Experian's computer system causes these mixes because it does not require or use full identifying information for a potential credit grantor's inquiry even when unique identifiers such as a full social security number are present. It does this in order to sell more credit reports.

45. Experian knows that their computer system causes one individual's credit report to be confused with another individual's credit report causing a "mixed file".

46. Experian has been sued repeatedly for failing to prevent mixed consumer files. *See, e.g., Calderon v. Experian Info. Solutions, Inc.*, 2012 U.S. Dist. LEXIS 89375, *10 (D. Idaho 2012); *Howley v. Experian Information Solutions, Inc.*, Civil Action No. 09-241 (D.N.J. filed January 16, 2009); *Ainsworth v. Experian Info. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 63174 (C.D. Cal. 2011); *Novak v. Experian Info. Solutions, Inc.*, 782 F. Supp. 2d 617 (N.D. Ill. 2011); *Comeaux v. Experian Info. Solutions*, 2004 U.S. Dist. LEXIS 10705, *20 (E.D. Tex. 2004); *Cartwright v. Experian*, et al., Case No. CV 09-427 (C.D. Cal. 2009); *Campbell v. Experian Info. Solutions, Inc.*, 2009 U.S. Dist. LEXIS 106045 (W.D. Mo. Nov. 13, 2009); *Jensen v. Experian Info. Solutions, Inc.*, 2001 U.S. Dist. LEXIS 15134 (E.D. Tex. Mar. 30, 2001).

47. Experian knowingly chooses to ignore these notices of its mixed file problems. It does so even though it already possesses a simple, easy and inexpensive means to correct and avoid the problem.

48. Despite these lawsuits, Experian has not significantly modified its procedures to assure that the credit reports that it prepares, publishes, and maintains are as accurate as possible, as required by the FCRA at 15 U.S.C. § 1681e(b).

49. Upon information and belief, Experian has not, and does not intend, to modify its procedures to comply with this section of the FCRA because compliance would drastically increase its operating expenses.

50. Accordingly, Experian's violation of 15 U.S.C. § 1681e(b) was willful and Experian is liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

51. Compounding this mixed file problem, Experian does not conduct independent investigations in response to consumer disputes. Instead, it merely parrots the response of the furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

52. Upon information and belief and consistent with its standard policies and procedures, Experian automatically generated its "investigation" results once Universal provided its response to Plaintiff's disputes, verifying the status of the account, and it did not take any additional actions to verify the accuracy of the information that Universal provided.

53. Instead, Experian blindly accepted Universal's version of the facts and continued to report the inaccurate, derogatory information on Plaintiff's credit reports.

54. Experian continues the practice of parroting the response from the furnisher despite numerous lawsuits alleging (and establishing) that it fails to conduct a reasonable investigation as required by the FCRA.

55. Experian does not intend to modify its dispute-processing procedures because doing so would drastically increase its operating expenses.

56. Therefore, at all times relevant to this Complaint, Experian's conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. By example only and without limitation, its conduct was willful because it ran a risk of harm that was known, or so obvious it should have been known, because it failed implement any procedure to identify and correct these common errors prior to furnishing reports.

**COUNT ONE:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)**
**(DEFENDANTS TRANS UNION AND EXPERIAN)**

57. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

58. Trans Union and Experian violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files they published and maintained.

59. Because of Trans Union's and Experian's conduct, Plaintiff suffered actual damages, including without limitation: credit damage, damage to reputation, embarrassment, humiliation, and other emotional distress.

60. Trans Union's and Experian's conduct in violating § 1681e(b) was willful, rendering them liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorney's fees in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

**COUNT TWO:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681i**
**(DEFENDANT EXPERIAN)**

61.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

62.     Experian violated multiple sections of § 1681i, including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate in violation of § 1681i(a)(1); (2) failing to provide Universal with all the relevant information regarding Plaintiff's disputes in violation of § 1681i(a)(2); (3) failing to review and consider all relevant information submitted by Plaintiff in violation of §1681i(a)(4); (4) failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A).

63.     Because of Experian's violations of §1681i, Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

64.     Experian's violations of § 1681i were willful, rendering it liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorney's fees in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

**COUNT THREE:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(A)**
**(DEFENDANT UNIVERSAL)**

65.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

66. On one or more occasion within the past two years, by example only and without limitation, Universal violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

67. When Plaintiff disputed the account with Experian, Universal used a dispute system named, "e-Oscar," which has been adopted by the consumer reporting agencies and their furnisher-customers such as Universal. E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systemic and uniform.

68. When the credit bureaus receive consumer disputes, they (usually via an outsourced vendor) translate each dispute into an automated consumer dispute verification ("ACDV") form.

69. Upon information and belief, the ACDV form is the method by which Universal has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

70. Upon information and belief, Plaintiff alleges that Experian forwarded Plaintiff's dispute via an ACDV to Universal.

71. Universal understood the nature of Plaintiff's disputes when it received the ACDV form.

72. Upon information and belief, when Universal received the ACDV form containing Plaintiff's disputes, Universal followed a standard and systemically unlawful process where it only reviews its own internal computer screen for the account and repeats back the same information to the ACDV system that was previously reported to the credit reporting agency.

73. Upon information and belief, when Universal receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether the information already in its computer system is itself accurate.

74. Because of Universal's violations of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

75. Universal's conduct in violating § 1681s-2(b)(1)(A) was willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, Universal was negligent, entitling Plaintiff to recover under 15 U.S.C. §1681o.

76. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from Universal in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

**COUNT FOUR:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)**
**(DEFENDANT UNIVERSAL)**

77. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

78. On one or more occasions within the past two years, by example only and without limitation, Universal violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit bureaus.

79. As Plaintiff detailed in the previous Count, Universal has elected to use the e-Oscar system for its FCRA disputes received through the consumer reporting agencies.

80. Universal was aware of the meaning of the several dispute codes used by the consumer reporting agencies in e-Oscar.

81. Universal does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the consumer reporting agencies.

82. Universal understood Plaintiff's disputes and that Plaintiff claimed the information was inaccurate.

83. Because of Universal's violations of 15 U.S.C. § 1681s-2(b)(1)(B), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, and other emotional distress.

84. Universal's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, Universal was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

85. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from Universal in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT FIVE:
## VIOLATION OF FDCPA, 15 U.S.C. § 1692e
## (DEFENDANT UNIVERSAL)

86. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

87. Defendant Universal violated § 1692e of the FDCPA by using any false, deceptive, or misleading representation or means in connection with the collection of any debt including, but not limited to, attempting to collect a debt from the Plaintiff that she did not owe.

88. Plaintiff suffered actual damages as a result of Universal's violation of § 1692e, including embarrassment, humiliation, and other emotional distress.

89. Plaintiff is entitled to recover actual damages, statutory damages, her reasonable attorney's fees, and costs, pursuant to 15 U.S.C. § 1692k.

WHEREFORE, Plaintiff demands judgment for actual, statutory, and punitive damages against Defendants as pleaded above; her attorney's fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court deems proper.

**TRIAL BY JURY IS DEMANDED.**

                                        Respectfully Submitted,
                                        **VANESSA HATCH**

                                        By: */s/ Kristi C. Kelly*
                                                     Counsel

Kristi Cahoon Kelly, Bar No. 07244
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Phone: 703-424-7572
Fax: 703-591-0167
Email: kkelly@kellyguzzo.com

*Counsel for Plaintiff*